### EBERHARD v. MEHLMAN et al.
### No. 620.

Municipal Court of Appeals for the District of Columbia.

July 22, 1948.

---

Charles H. Quimby, of Washington, D. C., for appellant.

Philip Shinberg, of Washington, D. C. (Joseph Levin, of Washington, D.C., on the brief), for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This was an action by an architect for the value of drawings prepared to cover the remodeling of defendants' liquor store. The trial judge sitting without a jury found for defendants and plaintiff appeals.

From the stenographic transcript and from certain documents in the case there seems to have been no dispute that plaintiff was engaged to make the drawings and that his compensation was to be four percent of the estimated cost of the work covered thereby. The dispute centered around defendants' claim (which plaintiff denied) that they had made known to plaintiff before he undertook to prepare the drawings and also while such drawings were in course of preparation that they would not spend more than $8,000, or at the most $10,000 on the work and that despite such knowledge he prepared drawings calling for a construction cost of $19,000 or $20,000. The principal error assigned is that there was no evidence to support the finding for defendant, because there was none to show that plaintiff had been given notice of the cost limitation we have just mentioned.

There was testimony by defendants' contractor that before he took plaintiff to visit the premises he told him of the construction cost limitation which defendants had prescribed; that he repeated it to him after he took him there and introduced him to defendant Mehlman and explained and discussed in detail the work to be done. Defendants' attorney testified that he repeated the prescribed cost limitation to plaintiff at a meeting between plaintiff, the owners and the contractors, at which meeting plaintiff joined the contractors in expressing the opinion "that the cost of the proposed job should not exceed $10,000 and would seem likely to be approximately $8,000." There was also testimony by defendant Mehlman that at the same meeting he emphasized in plaintiff's presence that $8,000 was all he could spend on the work. Clearly this testimony was ample to support the finding below.

It is equally clear that the trial judge was not required to reject this testimony and accept plaintiff's statement that the cost of the work had never been discussed with him in advance or while he was preparing his drawings. The question of the weight of the evidence was for the trial judge and not for us to determine.

Another charge of error requires discussion. Appellant complains that because the trial judge kept the case under advisement and did not decide it until some thirteen months after the trial he "might well have not had the advantage of being able to remember the demeanor of the several witnesses on the stand, and accordingly be in the position to judge those whom he might consider as telling the truth and those whose testimony might be otherwise considered." He argues that because of this his motion for new trial should have been granted.

Possibly the trial judge depended upon the stenographic transcript to keep his recollection fresh as to the testimony in the case;[1]

---

[1] But the record does not show whether the transcript was written up before or after the judge's decision was announced.

542

and possibly he was able to do so. Even so, as appellant so reasonably argues, a busy trial judge with the heavy flow of court business which demands his thought, reflection and study in the course of a whole year, probably cannot over so long a period remember the demeanor of witnesses and be able to judge their credibility with the same assurance that he could if he decided the case while all the circumstances were fresher in his mind. Almost certainly, in the course of a year, a judge would lose much if not all the atmosphere of a trial, and his memory become dimmed as to those important (if sometimes intangible) factors which enable him accurately to judge and decide the issues. No doubt losing litigants (and for that matter successful ones, too) would have greater confidence in court decisions, and less reason to complain, if decisions were not so long delayed. This is especially true in a case like this, in which there were no legal issues, and consequently no research work to be done, and the single factual issue was far from intricate.

Nevertheless, though we cannot and do not approve the long delay in the decision of this case, we cannot say that the circumstances so tainted the finding as to require the granting of a new trial, or that it was an abuse of discretion to refuse it.

Affirmed.

