**MOORE & MOORE DRILLING COMPANY, Appellant,**

**v.**

**E. F. WHITE, Jr., et al., Appellees.**

**No. 15823.**

Court of Civil Appeals of Texas.

Dallas.

March 17, 1961.

Rehearing Denied April 21, 1961.

Sayles & Ford, McMahon, Smart, Sprain & Wilson, Abilene, for appellant

Rutledge & Rutledge, Abilene, for appellees.

WILLIAMS, Justice.

Appellant, Moore & Moore Drilling Company, a partnership, engaged in the business of drilling oil wells, entered into a written contract on July 25, 1957, with E. F. White, Jr. Corporation, whereby appellant agreed to drill a well on a lease in Fisher County, Texas, for a stated consideration. Appellant performed its contract by drilling to the contract depth, and presented its bill for $34,529.85. Payment not being made, appellant originally brought suit against the Dallas Exploration Corporation (being the new name for the original corporation, E. F. White, Jr. Corporation) and E. F. White, Jr., individually. In its first amended original petition appellant voluntarily dropped the Corporation as a party defendant and sought to cast liability upon the individual defendant E. F. White, Jr. Appellant based its action for individual liability against appellee, White, on three counts; (1) that E. F. White, Jr., Corporation, was a one-man corporation, owned and controlled by appellee for his sole benefit; that appellee for his sole benefit; that appellee was the alter-ego of said corporation; and that E. F. White, Jr., had created the corporation for the sole purpose of defrauding appellant; (2) that E. F. White, Jr. and E. F. White, Jr. Corporation were mining partners and thereby jointly liable for the drilling contract in question; and (3) that appellee had been unjustly enriched, and on quantum meruit was liable to appellant for the amount due on said drilling contract. Appellee White filed verified denial of the execution of the contract, individually; filed verified denial of the existence of the mining partnership alleged; filed special denial of the allegations of fraud; filed special plea of statute of frauds against the claim that he was personally liable under any promise to pay the debt of the corporation, all special pleas following his general denial of plaintiff's allegations. At the conclusion of the evidence of both parties before a jury, the trial court, on his own motion, withdrew the case from the jury and thereafter rendered judgment for appellee against appellant, from such judgment appeal is properly brought to this court.

The trial judge filed findings of fact to the effect that E. F. White, Jr. Corporation was duly and regularly organized as a corporation under the laws of the State of Texas, and that no action has even been taken to cancel, change or modify such corporate act, except that the corporate name was duly and regularly changed to the Dallas Exploration Company; that the Dallas Exploration Company was duly and regularly dissolved on or about January 13, 1958, and at the date of dissolution no assets of such corporation were delivered into the hands of, or remained in the hands of the defendant E. F. White, Jr.; that on July 25, 1957 Moore & Moore Drilling Company, a partnership, and the corporation, the E. F. White, Jr. Corporation, acting by and through its president, E. F. White, Jr., made and executed a written contract for the drilling of a well for oil and gas, which contract is the contract declared upon by plaintiff in this suit; that

such written contract was executed following and pursuant to the written offer made by Moore & Moore Drilling Company to the E. F. White, Jr. Corporation, and an acceptance of such offer duly and regularly made by such corporation, as evidence by the records of said corporation; that on July 25, 1957, the E. F. White, Jr. Corporation was not insolvent; that no one acting for Moore & Moore Drilling Company made any inquiry or investigation concerning the financial standing or responsibility of the E. F. White, Jr. Corporation prior to July 25, 1957, or until the completion of performance of the contract made on that date; that E. F. White, Jr., never concealed any fact, or made any false statement, or misrepresentation at any time, concerning the financial condition or responsibility of E. F. White, Jr. Corporation, or the Dallas Exploration Company; that the contract dated July 25, 1957 was not entered into by Moore & Moore Drilling Company as a result of, nor, was its execution induced by, any fraud or misrepresentations upon the part of anyone; that at all times material Moore & Moore Drilling Company had actual knowledge, as well as constructive knowledge, concerning the corporate existence of E. F. White, Jr. Corporation; and prior to the dissolution of the Dallas Exploration Company notice of its proposed dissolution was given to Moore & Moore Drilling Company; that the contract dated July 25, 1957, had been fully performed and that the unpaid balance thereunder is the amount of $34,529.85; and, finally, E. F. White, Jr. Corporation, was not the alter-ego of E. F. White, Jr. Based upon these findings of fact the trial court concluded, as a matter of law, that the incorporation of E. F. White, Jr. Corporation created a legal entity separate and apart from its individual stockholders; that the corporate existence of the corporation cannot be challenged except by the State of Texas; that Moore & Moore Drilling Company knowingly dealt with the corporation and is estopped from questioning the corporate existence; that since no fraud chargeable to the defendant, E. F. White, Jr., is shown under the record herein, Moore & Moore Drilling Company has no right to disregard the corporate entity and recover from E. F. White, Jr., one of the stockholders, upon a claim against the corporation; that no mining partnership between E. F. White, Jr. and the Corporation, and E. F. White, Jr. Corporation is shown to have existed; that no controverted issue of fact is shown in the record; that under the whole record no liability exists against E. F. White, Jr., individually, and that judgment should be entered for him; that since the corporation has been dismissed from the case no judgment could be rendered against such corporation.

 Appellant presents 39 alleged points of error. Appellee has challenged not only the sufficiency of these points but has objected to the manner in which appellant has attempted to brief the case by grouping points which are not related to each other, and also in failing to make proper reference to the record. We agree with appellee that appellant has not complied with Rule 418, Texas Rules of Civil Procedure in briefing its case. The 39 alleged points are, in the main, too general to direct this court's attention to the particular error complained of. Illustrative is point (1) "The court erred in refusing to allow plaintiff to file its first requested trial amendment"; (6) "the court erred in refusing to grant plaintiff's requested special issue No. 1;" (24) "the court erred in rendering judgment that plaintiff take nothing and that defendant go hence without day"; (38) "the court erred in failing to render judgment for plaintiff in the amount of $31,529.85, plus attorney's fee and interest". These, and many others are too general to require our consideration. Hardwick v. Jackson, Tex.Civ.App.1958, 315 S.W.2d 440. Also, appellant's points are improperly grouped together and fail to properly refer to the record so as to aid the court in considering said points. However, in the spirit of the liberal construction to be given to briefing rules, and

though our labors have been immeasureably increased, we have elected to consider and discuss the points as we understand them, as disclosed in the statements and arguments accompanying them. Wyche v. Noah, Civ.App.1956, 288 S.W.2d 866, n. r. e.; Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478. We therefore overrule appellee's objection to appellant's points.

■ In view of the trial court's action in withdrawing the case from the jury, and thereafter rendering judgment for appellee, based on findings that there was no issues of fact to go to a jury, we must assume that appellant's principal points are those numbered 23 to 39, inclusive, wherein it complains of the court withdrawing the case from the jury and rendering judgment against it, and also making the findings of fact and conclusions of law, upon which judgment was based. While these points of error are general in nature we construe them in the light of points 6 through .22, inclusive, which are points complaining of the trial court refusing appellant's special requested issues of fact. In other words, it is obvious that appellant thought that its special requested issues sufficiently pointed out the facts which it deemed raised by the evidence, and which should have gone to the jury. If, in truth, the facts are raised by the record, then the trial court did err in withdrawing the case from the jury. In reviewing this action we must, of course, construe the record in the light most favorable to appellant.

■ First, we consider the question of alleged fraud. By pleading, appellant claimed that appellee had created the corporation solely for the purpose of defeating his personal liability for the indebtedness growing out of the drilling of the well, and that such constituted a fraud on the appellant. While this is a pleading, we find no basis in the evidence to support this allegation. We have carefully reviewed the entire record and find that at the time the corporation was created it had a paid-in capital of $2,100, and an undivided ¾ths of ⅞ths of the working interest lease-hold in 460.62 acres of land and an undivided ⅜ths of ⅞ths of the working interest lease-hold in 100.6 acres of land, together with approximately $10,-000 payable under a "dry hole" commitment from Gulf Oil Corporation. There is no evidence of bad faith on the part of appellee in forming the corporation at the time it was formed. Subsequent events, namely the failure of the corporation, cannot afford the basis of finding of fraud or bad faith at the inception of the corporation. Appellant raises nothing more than a suspicion or surmise concerning this alleged fraud, and therefore its contention must be overruled. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

Appellant's next contention of fraud is that both at the time of the formation of the corporation, and at various stages during the performance of the drilling contract, appellee knew that the corporation was financially unable to meet its obligation under the drilling contract with appellant, and that he withheld this information from appellant. The record reveals the financial condition of the corporation at its inception, as illustrated above, and also shows that during the process of the drilling of the well by appellant, that appellee did know that the corporation would probably not have sufficient funds to pay the drilling bill upon the completion of the well. However, there is evidence that appellee was making efforts to remedy the financial condition of the corporation by sale of interest and other means. The record reveals, without controversy, that previous to the drilling of this well, appellant had done business with E. F. White, Jr., both as an individual, and as a trustee. These previous dealings had been completely satisfactory. On this occasion White had requested appellant to submit bids for drilling of the wells in question, and had specifically directed that the bids be made to E. F. White, Jr. Corporation.

The bid was made to E. F. White, Jr. Corporation, and the contract is clear and definite on its face that it was between appellant and a corporation, and not E. F. White, Jr., individually. During the course of the drilling operations a $3,000 payment by the corporation was made to appellant and received. Appellant's witnesses testified that E. F. White, Jr., made no statement to them with respect to the corporation other than the fact that the well provided for in the contract was to be drilled for the corporation, and they stated that they did not ask him any questions about it. Two partners of appellant testified unequivocally that they made no inquiry or investigation concerning the financial resources, standing or responsibility of the corporation, either at the date of the execution of the contract, or at any time thereafter, until the contract had been fully performed. Appellant was shown to be engaged in the drilling business, and to have had extensive experience in that business. Appellee contends, and we agree, that the production of oil and gas and the drilling of wells for that purpose is a speculative business and certainly the parties to this case entered into the undertaking with their eyes open.

Appellant does not contend that appellee made a misrepresentation to appellant upon which appellant relied to its detriment. Appellant relies entirely on the proposition that appellee withheld facts concerning the corporation's financial condition, and that this withholding of information constituted actionable fraud. With this contention we are unable to agree. Actionable fraud has certain fundamental characteristics; (1) there must be a misrepresentation as to material facts, either positive untrue statements, or concealment or failure to disclose facts within the knowledge of the parties sought to be charged, and as to which the law imposed upon such party a duty to disclose; (2) the complaining party must be shown to have relied upon the alleged misrepresentation to his damages; and (3) the complaining party must, himself, not have failed to exercise reasonable care to protect himself— in other words, in a "caveat emptor" situation he must not have shut his eyes and ears to matters equally open and available to him upon reasonable inquiry and investigation. Appellee correctly argues that disparaging inferences do not arise from lawful acts. And inferences cannot be made basis for recovery, particularly when it is equally possible to infer a favorable motive, as an unfavorable one.

While it is true that appellee failed to disclose the full financial picture of the corporation to appellant, we do not believe that there was any duty upon him to do so. Where not legally bound to volunteer information, a person is not to be charged with fraud in suppressing it. "When, therefore, the parties are dealing at arm's length, there being no confidential relationship, mere silence is not fraud, either actual or constructive." 20–A Tex. Jur. § 38, p. 70. The suppression of information could only be fraud where he knows that the other party is ignorant of such facts and that the other party has not equal opportunity of discovering the truth. "The mere insolvency of the purchaser, where no fraudulent purpose exists, as also the mere fact that the purchaser had knowledge that his debts exceed his assets, though the fact be unknown and uncommunicated to the vendor, will not vitiate the purchase." Gainesville Nat. Bank v. Bamberger, 77 Tex. 48, 13 S.W. 959, 961, 19 Am.St.Rep. 738; 20–A Tex.Jur. § 30, p. 65.

In Howard v. County of Nolan, Tex. Civ.App., 1959, 319 S.W.2d 947, 950, the court said:

"There was no false representation and reliance thereon. There is evidence of a failure by the representatives of the state to fully inform appellants of all the plans and construction data, including the plans for an overpass. But, silence even as to a material fact does not of itself amount to fraud. The state was under no duty

to volunteer this information and its failure to do so does not constitute fraud." 37 C.J.S. Fraud § 15, p. 243; 20–A Tex.Jur. 79.

This record fails to reveal any fiduciary relationship between these parties which would give rise to a duty on the part of appellee to disclose the financial condition of the corporation to appellant. This is especially so when these parties are dealing at arm's length, with their eyes wide open, and in the light of the testimony of the appellant's own witnesses to the effect that they at no time made any effort to investigate or make inquiry into the financial structure of the corporation with which they were dealing. We therefore, overrule appellant's contention of fraud and hold that there were no issues of fraud to go to the jury.

■ In another group of points, appellant complains of the action of the trial court in refusing to permit testimony to the effect that appellee had voluntarily agreed to pay the debt of the corporation. Upon each offer of this evidence appellee objected on the grounds that such would be in controvention of the Statute of Fraud, i. e., that the agreement of the appellee to pay the debt was not in writing and therefore unenforceable. Appellant makes no contention that this agreement was in writing but seeks to argue that the testimony was admissible, and an issue was made, to the effect that appellee agreed orally to pay the corporate debt and thereby became a principal debtor and the Statute of Fraud is not applicable to the transaction. There is authority to the proposition that when an officer of the corporation takes over corporate property and then orally agrees to pay its debts, he does become a debtor, and his agreement is not subject to the Statute. However, that rule is not applicable in the case under consideration. There is no evidence in this record that appellee took over the corporate property. The testimony is undisputed that at the conclusion of the life of the corporation all of its

property had ceased to exist and that the small amount of money had been paid to appellant. Appellant's contention further fails in that there is no evidence of a consideration for such an assumption of the indebtedness. "A consideration being essential to the validity of every contract, an unconditional, primary promise to pay the debt of another is not enforceable unless supported by a valuable consideration." 20–A Tex.Jur. § 15, pp. 285–286; and cases cited thereunder. Appellant's points are therefore overruled.

■ Appellant contends that there was sufficient evidence to raise the issue that E. F. White, Jr. and E. F. White, Jr. Corporation were engaged in a mining partnership and therefore, E. F. White, Jr., would be personally liable under these circumstances. In Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052, the elements necessary to establish mining partnership were held to be: (1) joint ownership, (2) joint operation, (3) mutual agency, (4) community of interest, and (5) sharing of profits. Joint operation and mutual agency were not established in that case. The Eastland Court of Civil Appeals, citing Luling Oil & Gas Co. v. Humble Oil & Refining Co., 144 Tex. 475, 191 S.W.2d 716, 722, under a similar agreement held that the parties were not partners. U. S. Truck Lines v. Texaco, Inc., Tex.Civ.App.1960, 337 S.W.2d 497. The facts in this case which we are now considering, reveal that the lease did not produce oil and therefore, there was no operation. It was also agreed between the Corporation and White that the development was to be at the sole cost and expense of the Corporation and that White made no obligation to pay any part of the expenses incurred. Therefore, the trial court was correct in holding, as a matter of law, that there was no mining partnership between the Corporation and White.

■ Appellant's point complaining of the action of the trial court in refusing to permit it to file its first trial amendment is

without merit. In the first place, the court permitted the appellant to file its second trial amendment containing most of the allegations in its first tendered amendment. Moreover, those portions of the tendered trial amendment had to do with appellee's promise to pay the debt of the corporation, and the alleged fraud of appellee, and what we have said above disposing of those points makes the testimony inadmissible. The refusal of the trial court to permit the filing of the trial amendment, if error, was harmless, Rule 434, T.R.C.P.

We have carefully considered this record in its entirety and have given every reasonable intendment in appellant's favor. We find no evidence of probative force to raise an issue of fact to go to the jury and therefore the action of the trial court in withdrawing the case from the jury and rendering judgment for appellee was correct.

The judgment of the trial court is affirmed.